UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAROLINE VAN WAGNER, individually
and on behalf of all others similarly situated,

Plaintiff,

v.

WELLNESS PET CO., INC., *et al.*,

Defendants.

No. 24-CV-08946 (KMK)

OPINION & ORDER

Appearances:

Julian C. Diamond, Esq.
Bursor & Fisher
New York, NY
*Counsel for Plaintiff*

David Kwasniewski, Esq.
Jeremy A. Cohen, Esq.
Matthew Borden, Esq.
BraunHagey & Borden LLP
San Francisco, CA
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Caroline Van Wagner ("Plaintiff") brings this suit against Wellness Pet Company, Inc. and WellPet LLC ("Defendants"), alleging Defendants misleadingly labeled certain pet food (the "Product") as "natural food . . . with added vitamins, minerals, and taurine" when the Product included ingredients that were not natural. (Compl. (Dkt. No. 1).). Defendants move to dismiss pursuant to Rule 12(b)(6). (Mot. to Dismiss (Dkt. No. 23).) Because the Complaint does not plausibly allege the label would mislead a reasonable consumer, the Court grants Defendants' Motion.

I.  Background

A.  Factual Background

The following facts are drawn from the Complaint and assumed true for the purposes of deciding the Motion to Dismiss.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Defendants "advertise, market, manufacture, distribute, and sell" pet food products nationwide.  (Compl. ¶ 11).  Both companies are based in Massachusetts and incorporated in Delaware.  (*Id.* ¶ 9–10.)  Among their offerings is Wellness Shreds Healthy Indulgence with Skipjack Tuna & Shrimp in Light Sauce, a cat food product (a mouthful, not just for a cat— accordingly, the "Product").  (*Id.* ¶ 8.)  The Product includes the following label on the bottom right of the packaging: "NATURAL FOOD FOR ADULT CATS," and in below in slightly smaller front, "with added vitamins, minerals & taurine."  (*Id.* ¶ 13.)  Defendants sell other products with similar labels as well.  (*Id.*)  "Reasonable consumers," Plaintiff alleges, "would understand [this] labeling to mean that the Products contain only natural ingredients, and not any synthetic substances."  (*Id.* ¶ 15.)

Nevertheless, Plaintiff alleges the Products did contain synthetic substances.  Plaintiff lists the following ingredients in the Product: "[x]anthan gum," a "thickening agent that, according to FDA regulations, is a synthetic substance" that is "manufactured through fermentation o[f] carbohydrates and subsequent treatment of the byproduct with isopropyl alcohol;" "pyridoxine hydrochloride," which is "synthetically created by treating pyridoxine with hydrochloride acid to form a salt compound;" "tricalcium phosphate," which is "a synthetic substance according to FDA regulations" that is "used as an anti-caking agent;" and "D-calcium pantothenate," "a salt derived from the pantothenic acid" that "is prepared synthetically from

2

isobutyraldehyde and formaldehyde via 1,1-dimethyl-2-hydroxypropionaldehyde and pantolactone." (Compl. ¶ 18.)[1] "No product labeled 'natural,'" Plaintiff further alleges, "should contain any of these ingredients," and a reasonable consumer would expect such a product not to. (*Id.* ¶ 19.)

Plaintiff ordered the Product in or around May 2024 to her home in Dutchess County through Chewy.com, an online pet products retailer. (Compl. ¶ 8.) She bought the Product because of Defendants' "marketing of the Product as 'natural,'" understanding "natural" to mean the Product lacked "synthetic ingredients." (*Id.*). Plaintiff alleges "[r]easonable consumers would understand Defendants' labeling" the same way. (*Id.* ¶ 15.) Had she known the Product included ingredients that were not, in fact, "natural," Plaintiff either would not have bought it or would rather have paid less for it. (*Id.* ¶ 8.)

---

[1] "Pyridoxine hydrochloride" is Vitamin B6, *Compound Summary: Pyridoxine Hydrochloride*, Nat'l Lib. of Med., https://pubchem.ncbi.nlm.nih.gov/compound/Pyridoxine-Hydrochloride [https://perma.cc/FGL4-H9F7] (last visited Feb. 27, 2026), and "D-Calcium pantothenate" is Vitamin B5, *Compound Summary: Calcium Pantothenate*, Nat'l Lib. Of Med., https://pubchem.ncbi.nlm.nih.gov/compound/Calcium-Pantothenate [https://perma.cc/HH4H-WVV5] (last visited Feb. 27, 2026). Tricalcium phosphate, or "TCP," is coded as a "[m]ineral supplement" by the World Health Organization and described that way in the Hazardous Substances Data Bank, *Compound Summary: Tricalcium Phosphate*, Nat'l Lib. of Med., https://pubchem.ncbi.nlm.nih.gov/compound/Tricalcium-Phosphate [https://perma.cc/W2HY-VCJ5] (last visited Feb. 27, 2026). Three of the four ingredients specifically named in the Complaint, except xanthan gum, are thus "vitamins" or "minerals." (Compl. ¶ 16.) The Court may take judicial notice of these sources, *Simon v. Taylor*, 252 F. Supp. 3d 1196, 1240 (D.N.M. 2017) ("The federal courts have long taken judicial notice of scientific facts established and accepted in the appropriate scientific community." (collecting cases)); *Azoplate Corp. v. Silverlith, Inc.*, 367 F. Supp. 711, 731 (D. Del. 1973) (holding "the Court [may] take[] judicial notice" of "standard chemical dictionaries"); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites."), and may do so at the motion to dismiss stage, *see Bellin v. Zucker*, 6 F.4th 463, 471 n.10 (2d Cir. 2021) (taking judicial notice of facts on a motion to dismiss).

3

B.  Procedural History

Plaintiff filed her Complaint on November 22, 2024, on behalf of herself and a putative class of consumers, seeking damages on four counts—violations of New York General Business Law §§ 349 and 350, violation of the "Massachusetts Unfair and Deceptive Business Practices Act," and breach of express warranty.[2]  (*See* Compl. (Dkt. No. 1).)  Defendant moved to dismiss on March 3, 2025.  (*See* Mot. to Dismiss (Dkt. No. 23); Mem. of L. in Supp. of Mot. to Dismiss ("Mot.") (Dkt. No. 24).)  Plaintiff responded on March 25, 2025.  (*See* Resp. to Mot. to Dismiss ("Resp.") (Dkt. No. 25).)  Defendant replied on April 8, 2025.  (*See* Reply Mem. of L. in Supp. of Mot. to Dismiss ("Reply") (Dkt. No. 26).)  Plaintiff filed a notice on July 21, 2025, calling the Court's attention to a newly decided case concerning a similar label.  (Notice of Suppl. Auth. (Dkt. No. 27).)

## II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

[2] The Complaint also sought injunctive relief.  (*See* Compl. 15.)  Defendants' Motion to Dismiss notes Plaintiff lacks standing to seek injunctive relief because "past purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm," and having grown wise to the deception, have nothing to gain from a forward-looking injunction.  (Mot. 13 (citing *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020)).)  Plaintiff therefore "concede[d] her demand for injunctive relief."  (Resp. 1 n.1.)

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch*, 699 F.3d at 145). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated

on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

### B.  Analysis

The Court begins with Defendants' asserted jurisdictional and statutory bars to Plaintiff's claim, then proceeds to the substance of the Complaint.

### 1.  Standing

Defendants argue Plaintiff lacks constitutional standing.  Standing asks "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Id.*; *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing." (quotation marks and citation omitted)); *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Although lack of Article III standing and subject matter jurisdiction are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority of a federal court to exercise jurisdiction." (citation omitted)).  "Constitutional standing refers to the requirements

that parties suing in federal court establish that a 'Case' or 'Controversy' exists within the meaning of Article III of the United States Constitution." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). Constitutional standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision."

*Id.* (second alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Defendants contend Plaintiff does not plausibly allege any injury. But the Complaint clearly does—Plaintiff specifically alleges that because of Defendants' "natural" labeling, she believed something about the Product that was not true, and paid more than she would have or should have otherwise because consumers are willing to pay more for products that are "natural." (*See* Compl. ¶ 8.) That clearly satisfies the "injury in fact" requirement of constitutional standing. *See Guariglia v. Procter & Gamble Co.*, No. 15-CV-04307, 2018 WL 1335356, at *12 (E.D.N.Y. Mar. 14, 2018) ("[C]ourts in this circuit have construed the payment of a price premium to be an injury in and of itself." (quotation marks omitted)) (collecting cases); *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703–04 (2d Cir. 2020) (summary order) ("Axon has suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury—paying a premium—as a result."). Defendants' argument that this disclosure was not misleading, and that it is therefore implausible Plaintiff was injured, goes to the merits of Plaintiff's consumer fraud claims and not whether she has standing. *See Bond v. United States*, 564 U.S. 211, 219 (2011) ("[T]he question whether a plaintiff states a

7

claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute, and conflation of the two concepts can cause confusion." (citation omitted)).

Plaintiff therefore has articulated an injury-in-fact and has standing to bring her claims.

### 2.  GBL Safe Harbor

Defendants also argue the "safe harbor provisions" of the New York General Business Law ("GBL") bar Plaintiff's claim because the Association of American Feed Control Officials ("AAFCO") has approved the language Defendants use on the Product.  (*See* Mot. 14–15.)  GBL § 349(d) provides a "complete defense" to § 349 claims where "the act or practice is . . . subject to and complies with the rules and regulations of . . . the federal trade commission or any official department . . . of the United States."  *See* N.Y. Gen. Bus. Law § 349(d).  GBL § 350-d(a) likewise provides a "complete defense" if "the advertisement is subject to and complies with the rules and regulations of . . . the Federal Trade Commission or any official department . . . of the state of New York."  *See* N.Y. Gen. Bus. Law § 350-d(a).  "Both safe harbor provisions require Defendant to identify a 'rule' or 'regulation' with which it has complied."  *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 70 (E.D.N.Y. 2017).

The "rule" Defendants identify is AAFCO's set of guidelines on the term "natural," which, Defendants contend, would permit the label here.  (Mot. 14–15.)  But Defendants do not show this is a rule within the meaning of the GBL—*i.e.*, a rule backed by law or endorsed by a government agency.  Rather, AAFCO is an "independent organization" that promulgates guidelines and model regulations that governments are free to accept, modify, or reject, and Defendants do not show any agency of state or federal government has adopted the guidelines as to "natural" labeling.  *See* U.S. Food & Drug Admin., CVM GFI #293, FDA Enforcement Policy for AAFCO-Defined Animal Feed Ingredients: Guidance for Industry 2 (2024) ("AAFCO

8

provides a mechanism for developing and facilitating the adoption of uniform State laws, regulations, standards, definitions, and enforcement policies for the manufacturing, labeling, and sale of animal food."). For substantially that reason, "[s]everal district courts have declined to adopt the AAFCO's guidelines on 'natural' representations, and this Court similarly finds no authority requiring it to follow these standards." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 280 (E.D.N.Y. 2021) (collecting cases).

Accordingly, because Defendants do not show their labeling "is subject to and complies with federal [or relevant state] rules and regulations," the GBL's "safe harbor provisions are thus meaningless under the present circumstances," so "Plaintiff's GBL §§ 349 and 350 claims are not preempted." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465–66 (S.D.N.Y. 2019).

### 3. Merits of Plaintiff's Claims

#### a. GBL §§ 349 and 350

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.'" *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations adopted) (quoting N.Y. Gen. Bus. L. §§ 349, 350). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (explaining the standard for § 349 and § 350 claims is identical); *Duran v. Henkel of Am.,*

*Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same" (ellipsis in original)).  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520 F. Supp. 3d at 575 (applying the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).  The second element of this claim is determined by reference to what would mislead the reasonable consumer. *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he applicable legal standard is whether a reasonable consumer . . . would be misled by Defendants' actions.").

This reasonable consumer test asks whether a "representation[] or omission[]" is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995); *see also id.* (explaining that the test is "objective" because it is meant to be "mindful of the potential for a tidal wave of litigation against businesses that was not intended by the [New York State] legislature").  The New York Court of Appeals has held that this test "may be determined as a matter of law or fact (as individual cases require)." *Id.*; *accord Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.").  Nevertheless, district courts in the Second Circuit have tended to resolve the test against a plaintiff as a matter of law at the motion to dismiss stage "only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or

10

unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting *Stolz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)).

Here, the Court concludes that Plaintiff's claim is "patently implausible" and "unrealistic." Specifically, Plaintiff's interpretation of the label—that "natural" applies *both* to "food" and to the "added vitamins, minerals, and taurine"—is a "strained reading of the advertisements," *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 370 (S.D.N.Y. 2019), that clashes with the ordinary use of the English language, and is accordingly at best "unrealistic," *Eidelman*, 2017 WL 4277187, at *4. Therefore, the Court determines even at this early stage in the litigation that it is implausible that the label would mislead a reasonable consumer. *See id.* The phrase "with added" clearly cordons off different words; otherwise, the label would have no different meaning than one simply reading "natural food." And if there is anything "reasonable" about the "reasonable consumer," it must be that the consumer has a reasonable use and understanding of the language in which an advertisement is read. A reasonable consumer would not seek or be entitled to a refund for, *e.g.*:

- A "rare burger with added lettuce" when the lettuce was not pink in the middle;
- A box of "whole-grain cereal with added blueberries" when the blueberries were not made of whole grains;
- Tickets to a "Taylor Swift concert with added opening acts" when the opening performers were not named Taylor Swift.

Accordingly, a "reasonable consumer" could not read "natural food for adult cats, with added vitamins, minerals, and taurine" as implying the added vitamins, minerals, and taurine—which comprise three of the four "synthetic ingredients" the Complaint lists, *see supra* note 1—are

11

themselves natural.[3]  *See, e.g.*, *Hairston v. S. Beach Beverage Co.*, No. 12-CV-1429, 2012 WL

1893818, at \*5 (C.D. Cal. May 18, 2012) (rejecting a claim under California consumer

protection statutes because "no reasonable consumer would read the 'all natural' language as

modifying the 'with vitamins' language and believe the added vitamins are suppose[d] to be 'all

natural vitamins'");[4] *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-CV-03889, 2018 WL

---

[3] For linguistics enthusiasts, the Court will explain this intuitive concept.  "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier *normally* applies to the entire series," "in the absence of some other indication;" so a reader understands "unreasonable search and seizure" to mean "unreasonable search and unreasonable seizure."  Antonin Scalia & Bryan A. Garner, Reading Law 147 (2012) (emphasis added).  Scalia and Garner call this rule the "series qualifier canon"—but it has exceptions.  *Id.*  "The typical way in which syntax would suggest *no* carryover modification is that a determiner (*a*, *the*, *some*, etc.) will be repeated before the second element"—so, for example, in the phrase "[a] solid wall or a fence," "a" clearly interrupts the adjective "solid" from also describing the fence; so too, in the phrase "Delaware corporations and some partnerships," the "some" stops the adjectival form of "Delaware" such that the normal reading is that these partnerships could be in any state.  *Id.* at 148–49 (emphasis added).  "With added" plays that role in Defendants' label, so a reader infers that "natural" does not travel beyond "food."  While the Court does not expect the reasonable consumer has a copy of "Reading Law," the authors do not invent or decipher a secret language for lawyers—rather, the focus of that tome is "how a reasonable reader, fully competent in the language, would have understood [a] text at the time it was issued."  Scalia & Garner, *supra*, at 33.  This is not so different from a "reasonable consumer."  Critics of this rule even argue the exceptions are so broad as to swallow it, and the *default* reading of an adjective followed by a noun series is that the adjective describes *only* the closest noun.  *See, e.g.*, Adam G. Crews, *The So-Called Series-Qualifier Canon*, 116 Nw. U. L. Rev. Online 198, 209 (2021) ("[T]he canon is in tension with the general tendency to process words as attaching to the nearest antecedent." (citing, *inter alia*, Martin J. Pickering & Roger P. G. van Gompel, *Syntactic Parsing*, in Handbook of Psycholinguistics 455, 486 (Matthew J. Traxler & Morton A. Gernsbacher eds., 2d ed. 2006))).

For linguistics non-enthusiasts, this concept is more accessibly stated elsewhere.  *See* McGraw-Hill Reading Wonders, Grammar Practice Reproducibles (Grade 3) 126 ("An adjective usually comes before the noun it describes.").

[4] "Due to the similarities between New York's and California's statutes, consumer protection claims brought under New York and California law are governed by substantially the same reasonable consumer test."  *La Rosa v. SPD Swiss Precision Diagnostics GmbH*, No. 24-CV-1575, 2025 WL 841687, at \*2 (2d Cir. Mar. 18, 2025) (summary order) (citations and internal quotation marks omitted, alterations adopted).

1116715, at *4 (N.D. Cal. Mar. 1, 2018) (holding in the context of a common law implied warranty claim "[a] consumer might reasonably understand 'All Natural Dog Food With Added Vitamins, Minerals, & Nutrients' to mean that the food is free of synthetic additives *apart from the added vitamins, minerals, and nutrients*" (emphasis added)); *accord In re KIND LLC "Healthy and All Natural" Litig.*, 627 F. Supp. 3d 269, 294 n.27 (S.D.N.Y. 2022) ("As indicated in its name, the KIND Plus Antioxidants bar displays promine[n]tly on the front of its packaging that it is a KIND bar 'plus' '50% DV Antioxidants,' namely, 'Vitamins A, C, and E.'  As such, no reasonable consumer could have been deceived by the addition of added vitamins." (internal citation omitted) (citing *Hairston*, 2012 WL 1893818, at *5)).

While Plaintiff urges otherwise, (Resp. 1, 6–8), the Court does not read its colleagues presented with similar labels in the cases upon which Plaintiff relies, *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F. Supp. 3d 645, 656 (S.D.N.Y. 2025), and *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 268 (E.D.N.Y. 2021), as entirely disagreeing.  First, *Goetz* did not unambiguously conclude claims concerning the "added vitamins and minerals" were actionable.  *See Goetz*, 768 F. Supp. 3d at 656 ("According to Defendants, most of the challenged ingredients are 'vitamins and minerals,' and Plaintiffs' allegations that they are used in their 'synthetic forms' are conclusory.  But the operative complaint clearly identifies at least some 'synthetic ingredients,' including glycerin, xanthan gum, and menadione sodium bisulfate complex." (citations omitted)).  And *Grossman* includes closer calls than this case—while some of the labels had the same language as this one, that court homed in on the labels calling attention to "natural *ingredients*" in a way the label here did not.  *See Grossman*, 516 F. Supp. 3d at 279 (emphasis added); *id.* at 281 ("Third, defendants' contention that the 'qualified statement' on the Products' label [*i.e.*, the 'with added' language] prevents any consumer misconception is

also unpersuasive. Notably, one Simply Nourish Product identified by plaintiff . . . does not contain the qualified statement and instead simply represents that the Product is made of 'Naturally Wholesome Ingredients.'"). No such statements are at issue here.

On the other side of the same coin, a reasonable consumer *could* read the label as implying the contents of the package *other* than what is specifically called out—*i.e.*, the vitamins, minerals, and taurine—are natural. *See Van Mourik*, 2018 WL 1116715, at *4. Of the ingredients specifically listed in Plaintiff's complaint, that leaves only xanthan gum. Plaintiff alleges that xanthan gum is a "synthetic substance" that is "manufactured," so it is not natural, and therefore the xanthan gum in the Product itself is not natural. (Compl. ¶ 18.)

"Where an ingredient can be found in both natural and artificial forms, a plaintiff must plausibly allege that the artificial version is present in the product." *Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 20 (S.D.N.Y. 2025) (citing *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 306 (S.D.N.Y. 2023) ("[T]he allegations in the instant Complaint are a far cry from raising any 'factually substantiated allegations' that the Product contains artificial malic acid, rather than natural malic acid.")); *see also Indiviglio v. B&G Foods, Inc.*, No. 22-CV-9545, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023) ("To satisfy the pleading standards, plaintiff must draw a connection between the common industry practice and the actual practice used by defendant." (quotation marks omitted, alteration adopted)); *Wynn*, 2021 WL 168541, at *6 ("Absent any factually substantiated allegations that the vanillin, maltol, and piperonal in Defendants' product are not derived from natural sources, the Court finds that Plaintiffs have failed to allege the presence of artificial flavors[.]"). Accordingly, "the Court must determine (1) whether [Plaintiff] adequately alleges that manufactured [xanthan gum] is in the Product and (2) whether manufactured [xanthan gum] should be considered artificial." *Ward*, 773 F. Supp. 3d at 20.

14

But the Complaint does not allege *Defendant uses a synthetic xanthan gum in the Product*,[5] which it must in order to allege plausibly the Product contains synthetic ingredients in contradiction to its label—particularly given that Plaintiff concedes the possibility "that xanthan gum could also be produced naturally." (Resp. 11.) Nor does the FDA's inclusion in a list of "[s]ynthetics allowed" in food labeled organic, 7 C.F.R. § 205.605(b)(38), persuade this Court that xanthan gum is *per se* synthetic—the list must be premised on a different definition of "synthetic" than the Complaint assumes (for example, it includes "ozone" and "carbon dioxide," 7 C.F.R. §§ 205.605(b)(1), 205.605(b)(21), which the Court doubts anyone would believe do not occur in nature). Accordingly, because "[g]eneralized and conclusory allegations about an ingredient's artificial nature are insufficient to survive a motion to dismiss," *Ward*, 773 F. Supp. 3d at 19 (citing *Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399, 2024 WL 1158476, at *5

---

[5] The Response, however, does make this allegation, but still appears to be premised on xanthan gum inherently being synthetic. (*See* Resp. 11 ("Plaintiff has pleaded that the xanthan gum found in Defendants' Products is not natural[.]").) Putting to the side the fact that a party may not introduce additional allegations in responsive briefing, *Dohrmann-Gallik v. Lakeland Cent. Sch. Dist.*, No. 14-CV-4397, 2015 WL 4557373, at *7 (S.D.N.Y. July 27, 2015) ("To the extent that [the p]laintiff asserts additional facts in her opposition papers in an attempt to resuscitate this claim, a party is not entitled to amend a complaint through statements made in opposition papers." (quotation marks omitted)), the Court is skeptical of the Response's new claim that xanthan gum is *ipso facto* not natural because its production "involves commercial manufacture," (Resp. 11)—as the Reply notes, many products a reasonable consumer would consider "natural" involve commercial manufacture, (Reply 5–6). For example, a reasonable consumer would not believe a product resembling what is pictured in the bottom-right corner of the packaging at page 8 of the Response, or even the Product at issue here, did not "involve" some "commercial manufacture." (Resp. 8; *see also* Reply 6 ("If Plaintiff actually believed this new definition, she could not possibly have thought that shredded, cooked tuna sold in a colorful pouch was natural.").) Accordingly, the *Complaint's* suggestion of how a reasonable consumer would understand "natural"—*i.e.*, "free from synthetic ingredients," (*see* Compl. ¶ 2), rather than free of any "manufacturing" processes—is more plausible. *See, e.g.*, *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *9 (S.D.N.Y. Mar. 30, 2018) ("The reasonable consumer, acting reasonably, may expect a 'natural' product to be free of synthetic ingredients.").

(S.D.N.Y. Mar. 18, 2024)), Plaintiff has not stated a claim stemming from the Product's inclusion of xanthan gum, either.  *See Valencia*, 2024 WL 1158476, at *5 ("Plaintiff's 'generalized statement about the production of citric acid is not enough to adequately allege the citric acid used in the Products is industrially produced.'" (alterations adopted) (quoting *Indiviglio*, 2023 WL 9022866, at *4)).

Because the Complaint does not plausibly allege the label would mislead the reasonable consumer, Defendants' Motion to Dismiss is granted as to the GBL counts in the Complaint.

### b.  Breach of Express Warranty

To adequately state a claim for breach of an express warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach."  *Wynn*, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)).  "Courts in this Circuit have held that labeling a product 'natural' can constitute an actionable warranty under New York law."  *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (collecting cases).

Defendant argues the breach of express warranty claims fail for the same reasons as the GBL claims.  (*See* Mot. 4.)  The Court agrees—because Plaintiff does not plausibly allege Defendants breached the label's warranty that the Product is "natural" "with added vitamins, minerals, and taurine," *see supra* Part II(B)(3)(a), the third element is not satisfied and the Complaint does not state a claim for breach of express warranty.  *See Wynn*, 2021 WL 168541, at *7 ("Plaintiffs' claim for breach of express warranty fails for similar reasons. . . . Because the

Court finds that Plaintiffs have failed to plausibly allege that Defendant's product does not comport with the statements contained on the label, this claim fails.").

### c.  Massachusetts Consumer Protection Law

The Massachusetts Consumer Protection Law "declare[s] unlawful" "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. ch. 93A § 2(a).  This law also turns on a "reasonable consumer" test.  *See Aspinall v. Philip Morris Cos., Inc.*, 813 N.E.2d 476, 488 (Mass. 2004) ("[A]n advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product).")  For the same reasons described *supra* Part II(B)(3)(a), Defendants' label would not mislead a reasonable consumer.[6]  Therefore, the Complaint also does not state a claim as to this count.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss.  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Should Plaintiff choose to

---

[6] Defendant argues Plaintiff does not have standing to assert violations of Massachusetts law in the first place, a state where she never alleges having bought the product or resided in. (*See* Mot. 12.)  Whether Plaintiff could assert claims for violations of Massachusetts law in an individual action, in this putative class action, she at least has Article III standing to do so (for other members of her putative class, even if not for herself).  *See Langan v. Johnson & Johnson Cons. Cos., Inc.*, 897 F.3d 88, 95 (2d Cir. 2018) ("Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place.").

17

file an amended complaint, she must do so within 30 days of this Opinion & Order, addressing

the deficiencies identified herein.  If Plaintiff fails to file an amended complaint within the

deadline, this case may be dismissed with prejudice.  The Clerk of Court is respectfully directed

to terminate the pending motion (Dkt. No. 23).

SO ORDERED.

DATED:      March 5, 2026
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

18